IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

(CHIEF) COL. MICHAEL S. OWL FEATHER-GORBEY,

      Petitioner,

v.                                        Case No. 5:22-cv-00007
                          (Consolidated with Case No. 5:22-cv-00131)

WARDEN, USP THOMSON,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is pending before the Honorable Frank W. Volk, United States District Judge, and referred to the undersigned United States Magistrate Judge for submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Pending before the court are Petitioner's Amended Petition (ECF No. 15) and Respondent's Motion to Dismiss or, in the alternative, for Summary Judgment (ECF No. 18).

### I.    *FACTUAL BACKGROUND AND PETITIONER'S CLAIMS FOR RELIEF*

Petitioner is a federal inmate presently designated to the United States Penitentiary ("USP") in Thomson, Illinois.  However, the instant proceeding challenges multiple disciplinary actions taken while he was incarcerated at the Federal Correctional Institution ("FCI") Beckley, in Beaver, West Virginia, between January 13, 2021 and April 15, 2022.  The Amended Petition on which this matter is now proceeding asserts due process challenges to the disciplinary proceedings surrounding Federal Bureau of Prisons ("BOP") Incident Reports ("IR") 3493959, 3525508, and 3534245, resulting in the loss of

good conduct time ("GCT") earned by Petitioner (consisting of the proposed disallowance of 81 days of GCT and the forfeiture of 60 days of non-vested GCT), among other sanctions. (ECF No. 15 at 6, Grounds One, Two, and Three).[1]

Petitioner's convoluted Amended Petition specifically alleges that: (1) IR 3493959 resulted from a discriminatory/retaliatory search of Petitioner's cell; (2) IR 3493959 should have been remanded to the Unit Discipline Committee ("UDC") for the issuance of lesser sanctions; (3) IR 3493959 effectively prevented Petitioner from practicing his Native American religion; (4) Petitioner was subjected to double jeopardy with respect to IR 3525508; (5) the Disciplinary Hearing Officer ("DHO") was not impartial during the proceedings; and (6) the DHO reports for all three incidents were improperly withheld or delayed. (ECF No. 15). Petitioner also asserts that there was insufficient evidence to support the charges in IR 3525508 and IR 3534245 and that he is "actually innocent" of those violations. Petitioner seeks expungement of these three disciplinary violations and restoration of the GCT he lost as a result thereof. (*Id*. at 7).

## II.    DISCUSSION

### A.    Inmate discipline process.

Respondent's Response addresses the Bureau of Prisons' ("BOP") rules for inmate discipline, which are found in 28 C.F.R. part 541 *et seq*.[2] According to these rules, where

---

[1] The Amended Petition contained a fourth ground for relief challenging Petitioner's maximum custody classification and referral for placement in a Special Management Unit ("SMU") and seeking "injunctive" relief barring his placement in "max custody" and SMU housing, as well as "reform of the FBOP discipline and SMU referral process." (ECF No. 15 at 8, 10, Ground Four). However, by Order entered on August 26, 2022 (ECF No. 14), the undersigned determined that those claims were not appropriate for consideration in this habeas corpus matter and directed the opening of a separate civil rights action, which is still pending before the presiding District Judge, but has been recommended for dismissal by another Magistrate Judge under the 28 U.S.C. § 1915(g). *See Feather-Gorbey v. Warden*, No. 5:22-cv-00354, ECF No. 7 (S.D. W. Va., June 23, 2023) (Proposed Findings and Recommendation) (Aboulhosn, M.J.) Thus, Ground Four will not be addressed herein.

[2] These same provisions are set forth in BOP Program Statement 5270.09.

a staff member believes an inmate has violated a BOP regulation, the staff member prepares an incident report and provides the inmate with a written copy of the charges against him, normally within 24 hours of when staff becomes aware of the alleged violation. *See* 28 C.F.R. § 541.5(a). Thereafter, an investigating officer is assigned to inform the inmate of the charges and take a statement from him. An inmate is advised that he has a right to remain silent. While an adverse inference may be drawn from his silence, it may not, standing alone, be used to support a finding that he committed the prohibited act. *Id.*, § 541.5(b).

Next, a Unit Disciplinary Committee ("UDC") will review the incident report, usually within five days of its issuance. The inmate is permitted to appear and make a statement and present documentary evidence before the UDC, either in person or electronically, except during the UDC's deliberations, or if institutional security would be jeopardized by his presence. *Id.*, §§ 541.7(c), (d), and (e). The UDC then makes a decision based upon at least some evidence, and if there is conflicting evidence, based upon the greater weight thereof. *Id.*, § 541.7(e).

The UDC may determine whether the inmate committed the prohibited act as charged or refer the case to a Disciplinary Hearing Officer ("DHO") for further proceedings. *Id.*, § 541.7. Certain charges mandate sanctions by the DHO.[3] When charges are referred to the DHO, the UDC advises the inmate of the rights afforded to him at the DHO hearing. *Id.*, § 541.7(g). An inmate may again request to have a staff representative and/or witnesses at the DHO hearing. *Id.*, § 541.8. At the hearing, the

---

[3] § 541.7(a)(4) provides that any charge of a greatest or high severity prohibited act will automatically be referred to the DHO. However, any offense eligible for loss of GCT, disciplinary segregation, or monetary sanctions may be referred to the DHO, as those sanctions may not be imposed by the UDC. 28 C.F.R. §541.7(a)(4), (f), and (g).

inmate may make a statement, present documentary evidence, and present witnesses on his behalf, subject to institutional security issues.  *Id.*, § 541.8(f).

The DHO considers all evidence presented at the hearing and determines whether the inmate committed the infraction, or whether further investigation is needed.  *Id.*, § 541.8(a).  The DHO prepares a written record of the proceedings, which need not be verbatim.  The record should document the advisement of the inmate's rights, the DHO's decision, the evidence relied upon in making the decision, and the reasons for the sanctions imposed.  *Id.*, § 541.8(h).

**B.    Federal due process requirements.**

Prison disciplinary proceedings are not criminal prosecutions.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Therefore, prisoners do not enjoy "the full panoply of due process rights [in prison disciplinary proceedings that are] due a defendant in . . . [criminal] proceedings."  *Id.*  When a prison disciplinary hearing may result in the loss of good time credit, due process requires the following:  (1) written notice of the charged violations at least 24 hours before the hearing; (2) disclosure of evidence against the prisoner; (3) the right to call witnesses and present documentary evidence (unless unduly hazardous to institutional safety or correctional goals); (4) a neutral and detached hearing officer; and (5) a written statement by the factfinder as to evidence relied on and reasons for disciplinary action.  *Id.* at 559-566; *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972); *Segarra v. McDade*, 706 F.2d 1301, 1304 (4th Cir. 1983).  A prison disciplinary decision comports with the requirements of due process if "some evidence" supports the decision by the hearing officer.  *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445 (1985).  This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...."  *Id.* (citing *United States ex rel. Vajtauer v.*

*Commissioner of Immigration,* 273 U.S. 103, 106 (1927)).  In making this determination, a federal court does not independently examine the entire record or weigh the credibility of the evidence.  Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  *Id.* at 455-56.  "Revocation of good time credits is not comparable to a criminal conviction, . . . and neither the amount of evidence necessary to support such a conviction, *see Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979), nor any other standard greater than some evidence applies in this context."  *Id.* at 456.  The Fourth Circuit has described the "some evidence" requirement as an "exceedingly lenient standard, requiring only 'a modicum of evidence.'"  *Tyler v. Hooks*, 945 F.3d 159, 170-173 (4th Cir. 2019) (describing the "low burden" of the evidentiary requirement for a prison disciplinary violation and finding a "rare case where federal habeas relief will be available due to a total absence of evidence in the record.").  The undersigned will address whether each of the three prison disciplinary actions challenged herein comported with federal due process requirements based upon this authority.

### C.    Petitioner's claims concerning each disciplinary action.

#### 1.    *Incident Report 3493959*

On February 14, 2021, FCI Beckley staff member H. Knell prepared IR 3493959 charging Petitioner with Possession of a Non-Hazardous Tool in violation of BOP disciplinary code 331, a moderate severity level offense.  (ECF No. 18, Ex. 2, Declaration of Melissa Leslie, Attach. A, Incident Report No. 3493959, Sections 9-13).  The report indicated that:

> At approximately 1220 I randomly searched cell 420 in Poplar A Upper where inmate GORBEY, MICHAEL, #33405-013, was assigned. When I entered the cell inmate Gorbey had something in his hands and I told him

> to put it on top of the wall locker and get out of the cell.  After inspection of
> the unknown item that was in his hands there was 2 small plastic baggies
> that were filled with a brown leafy substance that smelled of tobacco.

(*Id.*, § 11).  A copy of the incident report was provided to Petitioner on April 14, 2021.  (*Id.*,

§§ 15-16).  Petitioner was advised of his rights at that time.  (*Id.*, § 23).  Petitioner stated

that he is "allowed to have small amounts of religious sage on his person and in his cell

for him to smoke" and he "did not have tobacco in his hands when the officer entered his

cell."  (*Id.*, § 24).

A UDC hearing was conducted on April 16, 2021.  (*Id.*)  Petitioner again stated that

"what was found if it was tobacco was a religious item that he is allowed to have because

of being Native American."  (*Id.*, § 17).  At the conclusion of the hearing, the UDC referred

the charges to the DHO.  (*Id.*, §§ 18 & 20).  The UDC advised Petitioner of their decision

and his right to appeal within 20 calendar days.  (*Id.*, § 18).  Upon referral to the DHO,

Petitioner was provided an Inmate Rights at Discipline Hearing form. (ECF No. 18, Ex. 2,

Attach. B, Inmate Rights at Discipline Hearing (IR 3493959)).  Petitioner signed the form

on April 16, 2021, acknowledging he had been advised of his rights. (*Id.*)

A DHO hearing was held on June 17, 2021.  (ECF No. 18, Ex. 2, Attach. C, DHO

Report (IR 3493959)).  At the hearing, Petitioner requested and received as a staff

representative FCI Beckley Religious Assistant B. Copney ("Copney").  (*Id.*, §§ II(B)-(C)).

Copney met with Petitioner prior to the DHO hearing.  (*Id.*, § II(C)).  Copney then

appeared at the DHO hearing and advised the DHO that Petitioner did not ask him to do

anything in preparation for the hearing, but only wanted his presence.  (*Id.*)  Petitioner

acknowledged he understood his due process rights.  (*Id.*, § III(B)).  He also acknowledged

that the UDC discussed his rights with him at his UDC hearing, and he raised no issues

with the discipline process up to that point.  (*Id.*)  Petitioner called two inmate witnesses

and requested that the DHO ask both inmates "if this was a random search." (*Id.*, §
III(C)(2)).  Both witnesses testified that the officer went straight to Petitioner's cell. (*Id.*)
Petitioner also presented two pages of documentary evidence. (*Id.*, § III(B)).  Petitioner
admitted to possessing the tobacco, but claimed he could possess tobacco and religious
herbs as a practicing Native American. (*Id.*, § V).

At the conclusion of the hearing, the DHO found that the greater weight of the
evidence supported the finding that Petitioner committed the prohibited act, and the
DHO found Petitioner guilty of Possession of Non-Hazardous Tool (Tobacco), in violation
of BOP disciplinary code 331. (*Id.*, § V).  In making this finding, the DHO relied upon the
reporting officer's statement contained in the incident report. (*Id.*)  The DHO also
considered Petitioner's own statement and those of the other witnesses, as well as the
documentary evidence offered by Petitioner stating that he could possess "small amounts
of sacred herbs (identified locally)." (*Id.*)  However, the DHO noted that the documents
made no mention of tobacco or that it may be possessed in a plastic baggie, instead of a
medicine bag. (*Id.*)  Further, the DHO noted that she contacted FCI Beckley Supervisory
Chaplain Weaver by phone to ask if Petitioner is allowed to possess tobacco in his unit
based on his Native American religion, and Chaplain Weaver responded "no, and the only
time that he can possess tobacco is at the sweat lodge." (*Id.*)

Accordingly, the DHO found, based on the greater weight of the evidence
presented, that Petitioner committed the prohibited act and sanctioned him with the
disallowance of 13 days of GCT, and the loss of email and telephone privileges for 60 days.
(*Id.*, § VI).  The DHO stated that these sanctions were imposed for the following reasons:

> The sanction of the disallowance of Good Conduct Time is imposed
> to comply with the inmate discipline policy regarding recommended
> disallowance of Good Conduct Time when an inmate is found to have

> committed a Moderate Severity prohibited act. The sanction of email
> restriction was imposed to punish Gorbey for his actions in relation to
> having committed this prohibited act and to serve as a deterrent to keep
> others from committing similar acts.

(*Id.*, § VII).  Petitioner was advised of his right to appeal and was provided a copy of the

DHO report on October 14, 2021.  (*Id.*, §§ VIII & IX).

Petitioner asserts that the proceedings concerning IR 3493959 were improper

because the charge itself is grounded in a "discriminatory" and "retaliatory" cell search.

(ECF No. 15 at 9).  Petitioner's reply further claims that Petitioner had recently "won" an

argument with Officer Knell, the correctional officer who conducted the search and wrote

this incident report, over an unrelated issue concerning medical shoes.  Thus, Petitioner

essentially claims that "Knell's actions were plain harassment" and he took this

disciplinary action in retaliation and in violation of Petitioner's Eighth Amendment

rights.  (ECF No. 21 at 6-7).

Petitioner further contends that his punishment for this charge violates his

"religious rights" because he is, by prison policy, allegedly allowed to possess a small

quantity of religious herbs, including tobacco, to conduct his religious exercises.  (ECF

No. 15 at 9-10; ECF No. 21 at 8-9).  Petitioner further asserts that this charge should have

been remanded to the UDC for imposition of lesser sanctions because it was a first 300-

level offense.  (ECF No. 15 at 9; ECF No. 21 at 7-8).   Finally, Petitioner claims that the

DHO improperly withheld or delayed the issuance of the DHO report, which affected his

ability to appeal the sanctions and that, by the time the report was issued, he had finished

serving the sanctions other than the loss of GCT and effectively could no longer appeal

those rulings.  (ECF No. 9 at 6; ECF No. 21 at 10-12).

a.    Failure to exhaust administrative remedies.

Before turning to the merits of Petitioner's claims concerning IR 3493959, the undersigned will first address Respondent's assertion that Petitioner failed to properly exhaust his administrative remedies with respect to that disciplinary proceeding.[4] "Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions." *McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004) (per curiam); *see also United States v. Odiana*, 7 F.3d 227 (4th Cir. 1993) (per curiam) (unpublished table opinion) (noting that administrative exhaustion is required prior to filing § 2241); *United States v. Mercado*, 37 F. App'x 698, 699 (4th Cir. 2002) (per curiam) (dismissing § 2241 petition for failure to exhaust BOP's administrative remedies); *Woltz v. Ziegler*, No. 5:12–0238, 2012 WL 1599916, at *3 (S.D. W. Va. Mar. 23, 2012) ("Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, Courts consistently require prisoners to exhaust their administrative remedies prior to seeking habeas review under Section 2241." (internal citations omitted)), *report and recommendation adopted*, 2012 WL 1599894, at *1 (S.D. W. Va. May 7, 2012).

Under 28 C.F.R. § 542.10 *et seq.*, the BOP has established administrative remedy procedures through which an inmate may seek a formal review of an issue or complaint relating to his confinement.  Rather than filing locally with the Warden, however, an inmate challenging a DHO decision appeals directly to the Regional Director within 20 calendar days of receiving the DHO's report.  *See* 28 C.F.R §§ 542.14(d)(2), 542.15(a).  If the inmate is not satisfied with the Regional Director's response, he may then appeal to the Office of General Counsel in Washington, D.C. (also known as the "Central Office"

---

[4]  Respondent agrees that Petitioner properly exhausted the administrative remedies with respect to the other two disciplinary proceedings (IR 3525508 and IR 3534245).

level), using the appropriate forms, within 30 days of the date the Regional Director signed the response.  *See* 28 C.F.R. § 542.15(a).  An inmate is not deemed to have exhausted his administrative remedies until he has appealed and received a response at all levels.  *Id.*

As noted by Respondent, where an inmate demonstrates a valid reason for delay, an extension in filing time may be allowed.  (ECF No. 18 at 18).  Generally, valid reasons for delay require a situation which prevented the inmate from submitting the request within the established time frame, including: an extended period in-transit during which the inmate was separated from documents needed to prepare the request or appeal; an extended period of time during which the inmate was physically incapable of preparing a request or appeal; an unusually long period taken for informal resolution attempts; and indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions was delayed.  (*Id.*)  An extension requires the inmate to request a memo from staff to verify the reason for the delay.  (*Id.*)

An inmate's administrative remedy filing history is available for review through SENTRY via an "Administrative Remedy Generalized Retrieval" form.  (ECF No. 18, Ex. 1, Attach. B).  The Administrative Remedy Generalized Retrieval form identifies each grievance by a number and letter indicating at what level the remedy was filed and the number of times the remedy was filed at that level.  (*Id.*)  A remedy filed at the institution level is identified by an "F," at the Regional Office level by an "R," and at the Central Office level by an "A."  An initial remedy filed at the institution level is assigned an "F1."  If the administrative remedy is rejected and re-filed at the institutional level, the re-filed remedy is identified as "F2."  (*Id.*)  This same system is used at all three levels.  (*Id.*)

Respondent contends that Petitioner only filed one administrative remedy appealing the DHO decision concerning IR 3493959; that is administrative remedy 1099576-R1, which was filed at the regional level on October 26, 2021 and was denied and closed on November 19, 2021. (ECF No. 18 at 18; ECF No. 24 at 3 and Ex. 1).[5]  Respondent further contends that Petitioner did not further appeal administrative remedy 1099576 to the Central Office and, thus, he did not fully and properly exhaust his administrative remedies with respect to that DHO proceeding. (*Id.*)

Petitioner, on the other hand, asserts that he attempted to file additional administrative remedies with respect to the disciplinary proceedings concerning IR 3493959, but was met with allegedly erroneous rejections or other impediments caused by prison staff, such as denial of required forms and postage. (ECF No. 21 at 1-6). Specifically, Petitioner contends that he first attempted to file an administrative remedy at the regional level when he did not receive the DHO report within 15 days after the hearing. Petitioner, however, does not know that remedy number, but notes that it was filed before the period contained in the administrative remedy history excerpt provided by Respondent. (*Id.* at 1-2).

Petitioner further asserts that he then filed administrative remedy number 1097553-F1 with the Warden, arguing that he had been denied "meaningful access to the appeal process" because he had not yet received the DHO final report. (*Id.* at 3). That administrative remedy request was filed on October 13, 2021, and it was rejected that same date. (*Id.*; ECF No. 18, Ex. 1, Attach. B at 13). Petitioner contends that the rejection of this remedy request was improper because the applicable policy statement and

---

[5] Respondent acknowledges that there was a clerical error in its response/motion documents with respect to the administrative remedy number applicable to this DHO appeal, where the Declaration of Destiny Spearen improperly referred to administrative remedy 1097553-R2. (ECF No. 24 at 3 and Ex. 1).

regulations allow the Warden to review DHO proceedings "to ensure substantial compliance with the provisions of the discipline policy." (ECF No. 21 at 3, citing § 541.8(i)). Therefore, Petitioner claims that remedy number 1097553-F1 was improperly rejected, and he could not obtain appeal forms or postage from his unit team in order to appeal that remedy to the Central Office. (*Id.*)

Petitioner then received the DHO final report on October 14, 2021, and filed administrative remedy number 1099576-R1, thus properly appealing the decision to the Regional Director, on October 26, 2021. (*Id.*; ECF No. 18, Ex. 1, Attach. B at 13). When that remedy was denied and closed at the regional level on November 19, 2021, Petitioner again claims that he could not obtain forms from his unit team to file a BP11 appeal to the Central Office. (ECF No. 21 at 4).

Petitioner further claims that there were long periods of time between February 2021 and March 2022 where he was unable to obtain remedy forms and postage, and that, despite his extensive filing of grievances, his administrative remedy history demonstrates that there were no Central Office remedy appeals filed during that time. (*Id.* at 4-5). Petitioner further asserts that he filed numerous administrative remedies complaining about the denial of remedy forms and postage, which are also reflected on his administrative remedy history. (*Id.*; ECF No. 18. Ex. 1, Attach. B at 13-14). Thus, Petitioner asserts that he exhausted all "available" administrative remedies. *See Johnson v. True*, 125 F. Supp.2d 186, 188-89 (W.D. Va. 2000) (addressing availability of administrative remedies where efforts to exhaust are allegedly frustrated by prison staff).

A review of the administrative remedy history provided by Respondent clearly demonstrates that, after Petitioner's DHO appeal in administrative remedy 1090576-R1 was denied and closed by the Regional Director on November 19, 2021, Petitioner did not

timely appeal that decision to the Central Office level. (ECF No. 18, Ex. 1, Attach. A at 13). Nonetheless, other administrative remedies filed in that same timeframe suggest that Petitioner was also complaining about not being able to obtain remedy forms and mailing supplies, including postage, from BOP staff in order to file a timely appeal to the Central Office. (*Id.*) The administrative remedy history also appears to support Petitioner's assertion that he filed prior administrative remedies concerning the fact that the DHO final report had not been provided to him so that he could properly appeal it, but those remedies were rejected.

Although Petitioner clearly did not properly exhaust his administrative remedies with respect to IR 3493959, he has presented circumstances suggesting that the administrative remedy process was made unavailable to him and, out of an abundance of caution, the undersigned proposes that the presiding District Judge **FIND** that the exhaustion requirement should be excused with respect to the appeal of IR 3493959. Accordingly, the undersigned will proceed to review the merits of Petitioner's claims concerning that disciplinary matter.

b.    Procedural due process requirements.

Respondent next asserts that Petitioner was provided all process that was due him with respect to IR 3493959. A review of the disciplinary action reveals that the *Wolff* requirements were satisfied. Petitioner received a copy of IR 3493959 and all related paperwork, including a notice of his rights, more than 24 hours before both the UDC and DHO proceedings. He was also given the opportunity to call witnesses and present evidence, and he had the assistance of a staff representative. Petitioner's hearing was conducted by a neutral and impartial hearing officer, and he received written findings of

the evidence upon which the DHO relied and the reasons for the ordered sanctions. Thus, procedurally, Petitioner received all process that the federal constitution requires.

c.    Alleged discriminatory cell search.

In Ground One of his Amended Petition, however, Petitioner asserts that "due process requires searches to be justified" and that Officer Knell conducted an unjustified, discriminatory, and retaliatory search of his cell and "deliberately" erred by initially charging him with a level 200 offense "to get it to DHO for greater sanction."[6] (ECF No. 15 at 9). Petitioner's reply further contends that Knell conducted a targeted search of his cell, shortly after Petitioner had "won" an argument with Knell concerning medical shoes, and then abusively used the discipline process "for capricious and retaliatory sanctions which alone violates due process." (ECF No. 21 at 6-7). He also summarily claims that a "harassing cell search" violates the Eighth Amendment. (*Id.*) Petitioner's reply relies upon the testimony given to the DHO by two other inmate witnesses who said that Knell followed Petitioner into the unit and went directly to his cell and, thus, the search was not random. (*Id.* at 7).

Respondent, on the other hand, contends that a staff member may search an inmate's cell at any time and without any notice, prior approval, or even the inmate's presence. *See* 28 U.S.C. § 552.14(a); *see also* Program Statement 5521.06. (ECF No. 18 at 20). Thus, Respondent contends that Knell's search of Petitioner's cell was authorized and "[t]here is no other limitation or requirement placed on a search of an inmate's cell in this context." (*Id.*) The undersigned agrees that the search of Petitioner's cell did not violate due process or any other constitutional guarantee.

---

[6] There is no indication in the record before this court that Petitioner was initially charged with a level 200 offense for this conduct. Regardless, contrary to Petitioner's assertion, the regulations permit the referral of a first level 300 offense to the DHO for greater sanctions.

> d.    Failure to remand to UDC for lesser sanctions.

Petitioner further contends that the DHO was "without authority to convict [him] for a level 300 non-repeating offense" and that the loss of GCT for this first level 300 offense was inappropriate. (ECF No. 15 at 6). His Amended Petition states:

> Due process also provides that only a 3rd repeated offense within 12 months of a 300 level charge can be remanded to DHO for greater sanctions & therefore it violated due process by DHO Leslie finding only a 300 level offense appl[ies] yet failing to remand the issues back to the UDC for lesser sanctions as it violated Gorbey's due process by taking his good time on a 1st time 300 level charge.

(*Id.* at 9). Thus, Petitioner asserts that the charges should have been remanded to the UDC for lesser sanctions. (*Id.*)

Respondent asserts that the loss of GCT sanction rendered by the DHO was appropriate under the regulations and that Petitioner has not established any authority to support his position. (ECF No. 18 at 20-21). Respondent's memorandum of law states:

> Rather, 28 CFR §541.8(g) provides that if an inmate commits a prohibited act, "the DHO can impose any of the available sanctions listed in Tables 1 and 2." Table 1 then provides the available sanctions for a moderate severity level prohibited act such as 331 (Possession of a Non-Hazardous Tool), which Petitioner was found guilty in relation to IR 3493959. *See* Program Statement 5270.09 Table 1. One of the available sanctions for a DHO to issue is the disallowance of GCT in the amount of 1-14 days. *See id.* The DHO for IR 3493959 found Petitioner committed the prohibited act of possessing a non-hazardous tool, a moderate severity level act, and subsequently sanctioned Petitioner with loss of 13 days of GCT, which falls within the 1-14 days permitted by policy. Accordingly, the DHO operated and sanctioned within the scope of BOP policy, and Petitioner's challenge should fail.

(*Id.* at 21).

Petitioner's reply brief cites instead to § 541.7(f) concerning the authority of the UDC to issue sanctions. While Petitioner is correct that the UDC may not impose the loss of GCT, nothing in the regulations prohibits the DHO from reviewing and imposing loss

of GCT for a level 300 offense (even where it is not a repeated offense).[7]  Thus, Petitioner has misinterpreted the regulations and Petitioner has not demonstrated a plausible due process violation on this basis.

              e.      Violation of religious rights.

Petitioner further claims that this disciplinary action violated his religious rights because he is allegedly allowed to possess a small amount of tobacco to use in his religious exercises.  His Amended Petition states:

> Due process also affords people religious rights approved by FBOP policy and therefore due process was violated by punishing Gorbey for practicing his FBOP approved traditional Native American Indian religion.  42 U.S.C. § 1996 Title III Section 201(5) Discrimination Prohibited.[8]  No Native prisoner shall be punished for practicing traditional religion.  FCI Beckley staff trying to restrict Natives to possession of tobacco only in outdoor religious area violates FBOP policy and traditional rights and is not the least restrictive method possible especially in times of COVID-19 lockdowns with Natives having no access then to outdoor services.  While tobacco is a sacred herb used by Natives for spiritual, ceremonial, and medical purposes, while most all other federal prisons allow Natives to possess (at all times) small amounts of tobacco as long as they are not (smoking it) in restricted areas! which Gorbey was not alleged to have done.

---

[7]  Petitioner provided a supplemental exhibit setting forth that a repeat level 300 offense MUST be heard by the DHO (ECF No. 22 at 5, Supp. Ex. 1).  That document, however, does not demonstrate that the DHO may not hear a first level 300 offense.

[8]  This statute, known as the American Indian Religious Freedom Act, 42 U.S.C. § 1996, does not create a cause of action or any judicially enforceable individual rights.  *See, e.g., Saunders v. Patseavouras*, 808 F.2d 835 (4th Cir. 1986) (42 U.S.C.A. § 1996 is a policy statement by Congress that created no substantive rights); *Delgado v. Ballard,* No. 2:09-cv-01252, 2010 WL 3812363, at *8 (S.D.W. Va. Aug. 19, 2010), report and recommendation adopted in part, rejected in part, No. 2:09-1252, 2010 WL 3812358 (S.D.W. Va. Sept. 24, 2010) (citing *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 454 (1988)) (AIRFA does not create rights enforceable against government action restricting religious freedom and it does not create any cause of action) (report and recommendation rejected on other grounds); *Sturdevant v. Holder*, No. 1:09-cv-115, 2010 WL 3210961, at *2 (N.D.W. Va. Aug. 10, 2010) (same).  Rather, any claim grounded in the violation of a federal inmate's rights to exercise his religion are generally brought in a civil rights complaint under the First Amendment or the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb-1 et seq.  *See Madison v. Riter,* 355 F.3d 310, 315 (4th Cir. 2003) (RFRA applies to the federal government and prohibits the "substantial burden" on a person's exercise of religion).

(ECF No. 15 at 9-10). Thus, Petitioner contends that this disciplinary charge should be expunged and the 13 days of GCT that he lost restored. He also seeks injunctive relief in the form of an order permitting him to possess small amounts of tobacco at any time in any location in the prison "for prayers." (*Id.* at 10).

Respondent's motion documents contend that this claim is inappropriate for consideration in a habeas corpus proceeding and would be more appropriately brought in a civil rights complaint. (ECF No. 18 at 21-22). As noted by Respondent, courts have generally held that a § 1983 suit or a *Bivens* action is the appropriate means of challenging conditions of confinement, such as a violation of an inmate's religious exercise rights, whereas § 2241 petitions are not. *See Braddy v. Wilson*, 580 F. App'x 172, 173 (4th Cir. 2014) (deciding that when petitioner alleged constitutional violations "regarding only the conditions of his confinement," not the fact or duration of his sentence, his claims were properly brought under *Bivens*); *Rodriguez v. Ratledge*, 715 F. App'x 261, 265–66 (4th Cir. 2017), *cert. denied*, 139 S. Ct. 77, 202 L. Ed. 2d 52 (2018) (holding that a transfer to another BOP facility is not a cognizable § 2241 claim, because it is a challenge to the conditions of confinement, not its fact or duration); *Glaus v. Anderson*, 408 F.3d 382, 388 (7th Cir. 2005) (a § 2241 challenge to a condition of confinement was improper); *Carson v. Johnson*, 112 F.3d 818, 820-21 (5th Cir. 1997) (ruling that if "a favorable determination . . . would not automatically entitle [the prisoner] to accelerated release," he must instead file a civil rights suit). (*Id.* at 22).

Petitioner's reply suggests that, because the alleged violation of his religious rights resulted in the sanction of the loss of GCT, it is cognizable in habeas corpus and appropriate for resolution herein. (ECF No. 21 at 8). He further claims that, because the prison's policies related to possession of religious items allegedly allow Native Americans

to possess a small amount of tobacco that is not restricted to use only during outdoor religious ceremonies, he is innocent of this offense and was improperly sanctioned. (*Id.* at 8-9). In support of these contentions, Petitioner has offered several supplemental exhibits outlining permissible religious items. (ECF No. 22 at 3-4 and Supp. Exs. 2, 3). However, other evidence presented at the DHO hearing established that Native American prisoners are limited to possessing and using tobacco only during sweat lodge ceremonies. (ECF No. 18, Ex. 2, Attach. C, § V).

The undersigned agrees with Respondent that the issue of whether Petitioner's religious rights were violated by his being disciplined for possessing two baggies of tobacco concerns his conditions of confinement and is more appropriately addressed in a civil rights complaint, not the instant § 2241 habeas corpus petition, which is solely addressing whether Petitioner's due process rights were violated by three prison disciplinary proceedings. To the extent that Petitioner argues that this court should review the propriety of his alleged religious rights violations herein because his punishment for the tobacco offense included the loss of good conduct time which is a protected liberty interest appropriate for review in habeas corpus, the undersigned disagrees. The scope of review in the instant habeas proceeding is limited to whether Petitioner's procedural due process rights were observed and whether there was some evidence to support the violation. Those requirements were met herein.

f.    Delay in receipt of DHO report.

Finally, with respect to IR 3493959, Petitioner contends that the DHO report was unlawfully delayed or withheld from him which, he contends, violated his due process rights because it impeded his ability to appeal the decision beyond the timeframe in which some of his sanctions expired. The Amended Petition asserts:

18

> While we must note that due process violated in all 3 of these above listed reports 3493959, 3525508 & 3534245 by DHO Leslie & her secretary Mr. McClanahan withholding issuing DHO reports unreasonably forcing Gorbey to serve sanctions (before) the reports are even issued. * * * While being able to appeal within 20 days after issuing of the DHO report does not cure due process violations of staff (withholding) issuing the report until sanctions are already served or custody classifications or SMU proceedings (based on these same charges) are complete.

(ECF No. 15 at 12).[9]

Pursuant to BOP policy, the DHO is required to provide a report, which is *ordinarily* delivered within 15 days of the decision. *See* 28 CFR 541.8(h); *see also* Program Statement 5270.09. Respondent asserts that the word "ordinarily" suggests a timeframe but does not set forth a mandate. (ECF No. 18 at 22). BOP records indicate that Petitioner received the DHO Report for IR 3493959 on October 14, 2021. (ECF No. 18, Ex. 2, Attach. C, § IX). Consequently, Respondent asserts that BOP staff followed policy and complied with due process by delivering Petitioner a copy of the DHO Report, and therefore, this claim should fail. (ECF No. 18 at 22-23).

Petitioner's reply contends that the DHO report was withheld for an unreasonable period of time because the DHO hearing was held on June 17, 2021 and he did not receive the report until October 14, 2021, "some four months after the hearing." (ECF No. 21 at 10). During that time, Petitioner served and completed his loss of telephone and email privilege sanctions. Thus, Petitioner claims that the delay in receipt of the report prejudiced his ability to appeal those sanctions. (*Id.*)

Loss of privileges such as use of phone and email, however, do not automatically give rise to a protected liberty interest subject to due process guarantees. Rather,

---

[9] The court previously ruled that Petitioner's claims related to his SMU placement and proceedings concern his location and conditions of confinement which are not cognizable in federal habeas corpus and are no longer the subject of the instant proceedings.

Petitioner must demonstrate that such sanctions resulted in "an atypical and significant hardship in relation to ordinary prison life." *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). At best, Petitioner's petition documents assert that he finished serving his loss of privilege sanctions before he could appeal them and, consequently, had extremely limited avenues for communication outside the prison during the COVID-19 pandemic.

Nonetheless, the loss of phone and email privileges does not rise to the level of an atypical and significant hardship, even under those circumstances. *See, e.g., Wright v. Shartle*, 699 F. App'x 733, 733 (9th Cir. 2017) (citation omitted) (explaining that claims regarding the loss of phone privileges are not cognizable under section 2241); *Boriboune v. Litscher*, 91 F. App'x 498, 500 (7th Cir. 2003) (loss of telephone privileges while in disciplinary segregation implicated no liberty interest and triggered no due process protection); *Montgomery v. Medie*, No. 1:20-cv-777 (TSE/IDD), 2021 WL 2065410 (E.D. Va. Apr. 26, 2021); *Smart v. Goord,* 441 F. Supp.2d 631, 640 (S.D.N.Y. 2006) (loss of phone, packages, and commissary privileges does not give rise to a protected liberty interest); *Johnson v. Vroman*, No. 1:06-cv-145, 2006 WL 1050497, at *2 (W.D. Mich. 2006) (finding that a six-month restriction on telephone privileges does not amount to an atypical or significant hardship in relation to the ordinary incidents of prison life that would warrant due process protection); *Tanney v. Boles*, 400 F. Supp.2d 1027, 1040 (E.D. Mich. 2005) (citations omitted) (concluding that an inmate's loss or restriction of telephone privileges for disciplinary reasons is not considered an atypical significant hardship, even when the disciplinary charges are allegedly false, and therefore does not implicate a liberty interest protected by due process); *Husbands v. McClellan*, 990 F. Supp. 214, 217 (W.D.N.Y. 1998) ("The temporary loss of the various privileges alleged in this case — i.e., telephone, package, commissary, and recreation privileges — does not

represent the type of deprivation which could reasonably be viewed as imposing an atypical and significant hardship on an inmate.").

Moreover, even if Petitioner could demonstrate a protected liberty interest in these privileges, the due process requirements under *Wolff* do not include a right to appeal disciplinary sanctions.  *Wolff*, 418 U.S. at 563-71; *Firewalker-Fields v. Clarke*, No. 1:20-cv-599 (CMH/MSN), 2021 WL 9164703, at *4 (E.D. Va. Dec. 2, 2021), *aff'd,* No. 21-7769, 2022 WL 2915452 (4th Cir. July 25, 2022) (collecting cases holding that prisoners have no freestanding or protected due process right to institutional disciplinary appeals); *Jennings v. Stapleton*, No. 3:18-cv-793-HEH, 2020 WL 963050, at *7 (E.D. Va. Feb. 27, 2020) (There is no procedural due process right to a prison disciplinary appeal).  Thus, "[d]elayed receipt of a DHO report, even in violation of BOP procedures, without more, is also not a due process violation."  *Gainer v. Breckon*, No. 7:19-cv-00445, 2022 WL 1502583, *2 (W.D. Va. May 12, 2022); *see also Oswald v. Andrews*, No. 2:20-cv-00367, 2021 WL 2306737, *5 (E.D. Va. Apr. 19, 2021) (report and recommendation) (failure to provide inmate with DHO report for approximately four months. Absent actual prejudice, not a basis for habeas relief); *Shahan v. Ormond*, No. 3:18-cv-00200-HEH, 2018 WL 6681210, *7-8 (E.D. Va. Dec. 19, 2018) (claim that inmate was forced to serve out sanctions without opportunity to appeal due to delayed DHO report not actionable because there is no due process right to a prison disciplinary appeal and inmate showed no other prejudice).

For all these reasons, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated any plausible violation of his due process rights stemming from the disciplinary proceedings concerning IR 3493959.  Accordingly,

there are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law on Petitioner's claims in his § 2241 petition with respect to IR 3493959.

2. *Incident Report 3525508*

On July 16, 2021, FCI Beckley staff member D. McCoy prepared IR 3525508 charging Petitioner with Phone Abuse-Disrupt Monitoring in violation of BOP disciplinary code 297. (ECF No. 18, Ex. 2, Declaration of Melissa Leslie, Attach. D, Incident Report No. 3525508, Sections 9-13). The report indicated that:

> On 07-16-2021 at approx. 1235; I, Senior Officer Specialist D. McCoy, was monitoring Inmate telephone calls via Trufone system. I monitored a phone call placed on 06-20-2021, at 1450 hours, to [phone number] from phone station 3704, in Poplar A Upper Unit. It was listed under Inmate Gorbey, Michael, Reg. # 33405-013. At the beginning of each phone call, the Inmate must say, "United States of America," to verify their voice with the trufone system. I recognized the person on the phone who stated, "United States of America," was definitely not the same person who began speaking once the conversation began. After monitoring this call in its entirety and utilizing the search features on the trufone system, I determined that [another] Inmate [redacted] was the person on the phone speaking. I also monitored [the other inmate's] phone account, whereby he has placed many calls to the same aforementioned number [], and both voices match in tone and structure. Additionally, at the 1:38 mark of the call in question, [the other inmate] tells the lady on the phone, I liked your little fathers day message. How you tried to gas me up. I was able to link the same conversation subject matter to an email sent by [the other inmate] on the exact same date, to what appears to be a texting service email address, []. The number he wished to have his message sent to was [], which is contained in the subject of the email. The email states, "lol aww you tried your best to gas me uppp that actually made me smile lol I love yall more mwah." Further at the 5:05 mark of the call in question, the lady on the phone refers to [the other inmate] as [nickname]. In another texting service email sent on 07-08-2021, to number [same number], [the person on the call] refers to [the other inmate] as [same nickname]. All supporting evidence will be attached with this report.

(*Id.*, § 11) [Information in brackets was redacted in the report for privacy purposes].

A copy of the incident report was provided to Petitioner on July 16, 2021. (*Id.*, §§ 14-16). Petitioner was advised of his rights at that time. (*Id.*, § 23). Petitioner stated that

22

he understood his rights and declined to offer a statement. (*Id.*, § 24). The UDC hearing was conducted on July 20, 2021. (*Id.*, § 21). Petitioner stated his "phone was suspended by DHO on 06-16-2021, therefore he could not have made the calls." (*Id.*, § 17). At the conclusion of the hearing, the UDC referred the charges to the DHO because the potential sanctions are only available at the DHO level. (*Id.*, §§ 18 & 20). The UDC advised Petitioner of their decision and his right to appeal within 20 calendar days. (*Id.*, § 18).

Upon referral to the DHO, Petitioner was provided an Inmate Rights at Discipline Hearing form. (ECF No. 18, Ex. 2, Attach. E, Inmate Rights at Discipline Hearing (IR 3525508)). Petitioner signed the form on July 20, 2021, acknowledging he had been advised of his rights. (*Id.*) A DHO hearing was held on October 12, 2021. (ECF No. 18, Ex. 2, Attach. F, DHO Report (IR 3525508)). At the hearing, Petitioner again requested and received Copney as his staff representative. Copney met with Petitioner prior to the DHO hearing. (*Id.*, § II(C)). Copney acknowledged that Petitioner did not ask him to do anything in preparation for the hearing, but only wanted him to be present. (*Id.*) Copney was present for the DHO hearing. (*Id.*)

Petitioner acknowledged he understood his due process rights. (*Id.*, § III(B)). Petitioner also acknowledged that the UDC discussed his rights with him at his UDC hearing, and he raised no issues with the discipline process up to this point. (*Id.*) Petitioner did not call any witnesses or request any video footage be reviewed. (*Id.*, § III(B)(2)). He stated, "I never allowed [the other inmate] to have access to my TRUFONE account and I have no idea how he got access to my account." (*Id.*) At the conclusion of the hearing, the DHO found that the greater weight of the evidence supported the finding that Petitioner committed the prohibited act of Phone Abuse, in violation of BOP disciplinary code 297. (*Id.*, § V).

In making this finding, the DHO relied upon the reporting officer's statement contained in the incident report. (*Id.*)  The DHO also considered Petitioner's denial, but was not convinced or swayed by his statement. (*Id.*)  The DHO explained to Petitioner:

> In order for an inmate to use the inmate telephone system, he must first enter in a Phone Access Code (PAC).  Each inmate is given their own PAC which is not to [be] given or shared with any other inmate.  It is with this PAC that staff are able to identify which inmate is making a specific call and thus effectively monitor that conversation.  When an inmate shares this PAC, whether by giving the PAC to another inmate or entering the PAC and allowing the other inmate to speak on the phone, he and the other inmate are circumventing the telephone monitoring procedures.  Inmates are provided an A&O Handbook upon arrival which talks about telephone policy.  They also attend formal A&O classes which explain telephone policy in greater detail.  Both clearly state inmates will not share their PAC.  *See id.*  Petitioner did not provide any evidence to the DHO that he did not give his PAC to the other inmate or that he did not enter his PAC for the other inmate to use.

(*Id.*)

Accordingly, the DHO found, based on the greater weight of the evidence presented, that Petitioner committed the prohibited act and sanctioned him with the disallowance of 27 days of Good Conduct Time ("GCT") and three months loss of phone privileges.  (*Id.*, § VI).  These sanctions were imposed for the following reasons:

> The action/behavior on the part of any inmate to use their telephone in an unauthorized manner poses a serious threat to the ability of the staff to control the use of the telephone.  Your actions interfered with the ability of staff to monitor whether inmates are making calls for prohibited or illegal purposes.  The sanction of the disallowance of Good Conduct Time is imposed to comply with Inmate Discipline policy regarding recommended disallowance of Good Conduct Time when an inmate is found to have committed High Severity prohibited act. The sanction of Loss of Phone was imposed to deter Inmate Gorbey for his actions in relation to having committed this prohibited act and to serve as a deterrent to keep others from committing similar acts.  *See id.*, Section VII.  Petitioner was advised of his right to appeal and was provided a copy of the DHO report on February 18, 2022.

(*Id.*, §§ VIII & IX).

Petitioner's Amended Petition makes four challenges to IR 3525508. First, he argues that the disciplinary proceedings for IR 3525508 and IR 3521636 constitute double jeopardy. (ECF No. 15 at 6, 10). Second, he alleges the DHO was not impartial. (*Id.* at 6). Third, he alleges that the DHO Report was unreasonably delayed. (*Id.*) Finally, Petitioner contends that he is actually innocent of the phone abuse violations because his phone privileges were suspended at the time of the alleged violations and, thus, there is insufficient evidence to support his guilt. (*Id.* at 10). The undersigned will address each claim in turn.

a.    Double Jeopardy

Petitioner's Amended Petition first challenges his DHO proceedings concerning IR 3525508 on the basis that he had a hearing and was sanctioned for an identical offense as that in IR 3521636. He contends that IR 3521636 and IR 3525508 are supported by the same facts. (ECF No. 15 at 6, 10).

Petitioner received IR 3521636 on July 7, 2021, charging him with the prohibited act of Phone Abuse, in violation of BOP disciplinary code 297 by allowing another inmate to use his telephone access card to make a phone call on June 20, 2021. (ECF No. 18, Attach, K, DHO Report (3521636)). The incident report indicated that staff had discovered 33 different calls made to the same number using Petitioner's PAC since June 1, 2021. (*Id.*)

On July 16, 2021, Petitioner was charged by another staff member in IR 3525508 with the same offense for another call made on June 20, 2021. Both incident reports were heard in a DHO hearing on October 12, 2021 resulting in the DHO finding that he committed the prohibited act of Phone Abuse, in violation of BOP disciplinary code 297, resulting in separate sanctions of loss of GCT and loss of privileges. (ECF No. 18, Ex. 2,

Attach. D, E, and K).   Petitioner now argues that the second charge and sanctions constitute double jeopardy.  (ECF No. 15 at 6. 10).[10]

As noted by Respondent, the Supreme Court has recognized that "the Double Jeopardy Clause provides three related protections with respect to criminal proceedings: 'It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" *United States v. Wilson*, 420 U.S. 332, 343 (1975) (internal citations omitted).  (ECF No. 18 at 23-24).  Respondent's motion further states:

> The Double Jeopardy Clause only protects the imposition of multiple criminal punishments for the same offense. *Helverling v. Mitchell*, 303 U.S. 391, 399 (1938) (emphasis added).  Further, "in the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution." *Breed v. Jones*, 421 U.S. 519, 528 (1975).

(*Id.*)  Based upon this authority, Respondent contends that federal courts that have addressed the issue have found that double jeopardy principles do not extend to the context of prison disciplinary proceedings.  *See*, *e.g.*, *Tedesco v. Secretary for Dept. of Corrections*, 190 F. App'x 752, 757 (11th Cir. 2006) ("Prison disciplinary hearings are not criminal proceedings to which the protection against double jeopardy applies."); *Rivera v. Toth*, 477 F.2d 534 (10th Cir. 1973); *Howard v. Matthews*, No. 89-3224-R, 1992 WL 52485, at *2 (D. Kan. Feb. 24, 1992) (citing *Breed*, 421 U.S. 519 (1975);; *Gorman v. Moody*, 710 F. Supp. 1256 (N.D. Ind. 1989)).  (*Id.* at 24).  The Eleventh Circuit has further opined that regulations authorizing the prison disciplinary sanctions imposed are

---

[10]  According to Petitioner's Amended Petition, IR 3521636 was subsequently expunged for other due process violations that are not relevant here.  (ECF No. 15 at 10).

remedial administrative penalties for inmate misconduct, not criminal in nature. *United States v. Mayes*, 158 F.3d 1215, 1224-25 (11th Cir. 1998).

Although Petitioner was cited for two violations of BOP disciplinary code 297, Respondent contends that they stem from different occurrences of recurring phone abuse violations, barring any potential double jeopardy argument. (ECF No. 18 at 25 and Ex. 2, Attach. F & K). The DHO explained to Petitioner that he could be written up each time he commits the offense. (*Id.*) Moreover, as federal courts have consistently held, the disciplinary hearings in a prison context are not criminal in nature, and therefore, cannot give rise to a double jeopardy claim. Accordingly, Petitioner's double jeopardy argument fails as a matter of law.

b. DHO impartiality.

Petitioner alleges that the DHO was biased regarding the disciplinary hearing for IR 3525508. His petition and reply documents suggest that the DHO was not impartial because she ordered the re-write of IR 3521636 (which is not being reviewed herein), which he appears to contend also affected her impartiality with respect to IR 3525508. His Amended Petition also states that the "DHO also violated by other *ex parte* communications with reporting officer." (ECF No. 15 at 10). His reply brief further contends that [verbatim]:

> [R]e-writes violate impartiality as the DHO receives the reports & then after considering them sends them (back to) UDC & other staff to re-write to suit the DHO needs. Thus the DHO is orchestrating reports being directed to him-her. Also violating FBOP policy which prohibits this very act. 5270.9. Gorbey's staff rep Mr. Copney can testify that at the hearing DHO Leslie admitted she had been x-parte communicating with reporting officers Mrs. Jack in 3521636 and Mr. D. McCoy prior to the hearing going over the facts. While she ordered 3521636 rewrote to satisfy her needs being virtually the same information used in 3525508 clearly violated impartiality requiring expungement of the charge.

(ECF No. 21 at 17-18).

Respondent asserts that Petitioner has not specified any particular *ex parte* communications to which he is referring.  Nonetheless, Respondent asserts that "[e]ven if the DHO communicated with the reporting officer for IR 3525508, such communication without further context does not equate an actual bias." (ECF No. 18 at 26).  Moreover, DHO Leslie's second declaration indicates that she did not send IR 3525508 back for any reinvestigation.  (ECF No. 26, Ex. 1 at 3, ¶ 7).  Petitioner has not rebutted this assertion with any actual evidence.  The undersigned agrees that Petitioner has not established any basis to find that the DHO was actually biased with respect to IR 3525508.

c.    Unreasonable delay of DHO report.

Petitioner also argues the final DHO report for IR 3525508 was unreasonably delayed or withheld from him, causing him to finish serving certain loss of privilege sanctions before he was even able to appeal the DHO's decision.  (ECF No. 15 at 12).  As an example, Petitioner asserts that, by the time he was able to appeal the sanctions for IR 3521636 (which again is not being directly challenged herein), which was expunged on appeal, he had already finished serving the loss of privilege sanctions for that offense, and did not receive any reduction in similar sanctions for his other offenses.  (*Id.*)  Thus, he claims that he suffered undue prejudice and a violation of due process.

BOP records indicate that Petitioner received the DHO Report for IR 3525508 on February 18, 2022 (4 months after the DHO hearing).  (ECF No. 18, Ex. 2, Attach. F, § IX).  Respondent again asserts that BOP staff complied with policy and due process requirements by delivering Petitioner a copy of the DHO Report, and that there is no mandate that it be provided within 15 days as asserted by Petitioner.  (ECF No. 18 at 26).

28

As addressed above, the loss of phone and email privileges does not rise to the level of an atypical and significant hardship and Petitioner has no due process right to appeal a prison disciplinary sanction. Nor has he established other actual prejudice from the delay in receiving the report. Thus, he has not established any plausible due process violation stemming from the alleged delay in receiving the DHO report for IR 3525508.

d.    Insufficiency of evidence.

Petitioner's Amended Petition and reply to Respondent's motion also asserts that it was impossible for him to be guilty of the telephone abuse charges because his phone privileges were suspended at the time the calls were allegedly made. (ECF No. 15 at 10; ECF No. 21 at 15-17). Petitioner further asserts that Respondent did not properly address this claim in its motion documents and, thus, has "ceded" to this assertion. (*Id.* at 17).

Petitioner's phone privileges were suspended for IR 3493959 from June 17, 2021 to August 16, 2021. (ECF No. 21 at 15 and Ex. 2). Without any support therefore, however, Petitioner contends [verbatim]:

> When the system is suspended, the inmate (cannot) even access the phone & therefore in no way (could) Gorbey have committed the alleged prohibited acts on 6-20-21 it is <u>not</u> physically or factually possible & while Gorbey may be seen (trying) his phone to see if the suspension is in place, him handing the phone to another inmate in line is not at all uncommon & either a glitch in the system occurre given both inmates access D.C. phone numbers <u>or</u> staff simply set Gorbey up fabricating the charges on him, but given the suspension was already in place, there is <u>no way</u> Gorbey access his phone 6-20-21 & therefore he is actually innocent of any rule violation & charge must be abspunge.

(ECF No. 21 at 15-16). Petitioner contends that this fact overcomes the limited "some evidence" standard that this court applies to due process reviews of prison disciplinary proceedings. (*Id.* at 16).

"[A] claim of actual innocence is generally not a basis for federal habeas corpus relief." *Mercery v. Phelps*, No. 8:20-cv-04126-MGL-JDA, 2021 WL 2690176, *5 (D.S.C. May 13, 2021), *report and recommendation adopted*, 2021 WL 2688842 (D.S.C. June 30, 2021) (quoting *Williams v. Warden*, No. 1:17-cv-946-JMC-SVH, 2017 WL 8794895, *4 (D.S.C. Oct. 12, 2017), *report and recommendation adopted by* 2018 WL 718959 (D.S.C. Feb. 5, 2018), *aff'd* 744 F. App'x 179 (4th Cir. Dec. 4, 2018). "'The due process clause does not require later consideration of evidence that could have been but was not presented during a prison disciplinary proceeding.'" *Id.* (quoting *Jones v. McCaughtry*, 6 F. App'x 371, 372-73 (7th Cir. 2001).

Although Petitioner allegedly told the UDC that his phone privileges were suspended on the operative date (ECF No. 18, Ex. 2, Attach. D, Part II (17)), there is no evidence in the record of the DHO proceedings that Petitioner presented this as a defense to the phone abuse charges.  (ECF No. 18. Ex. 2, Attach. F, § III).  Nor is this new evidence, as Petitioner was or should have been aware of the effects of the suspension at the time of his DHO hearing.  Based upon the evidence that the DHO considered, the "some evidence" standard was satisfied.  Accordingly, Petitioner has not demonstrated a due process violation grounded in insufficiency of evidence for the charge in IR 3525508.

For all these reasons, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not established any plausible due process violations surrounding the disciplinary proceedings for IR 3525508.  There are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law on the claims in Petitioner's § 2241 petition with respect to IR 3525508.

### 3. Incident Report 3534245

On August 9, 2021, FCI Beckley staff member C. Whitt prepared IR 3534245

charging Petitioner with Escape (Attempting), in violation of BOP disciplinary code 102,

and Possessing a Hazardous Tool, in violation of BOP disciplinary code 108.  (ECF No. 18,

Ex. 2, Attach. G, Incident Report No. 3534245, Sections 9-13).  The report indicated that:

> On August 9, 2021 at approx. 7:30 p.m. I, Recreation Specialist C. Whitt, was monitoring inmates on the FCI Beckley recreation yard.  I was positioned on the gravel walking track near the gymnasium facing the lower softball field when I saw inmate Gorbey, Michael (Reg. No. 33405-013) standing in an area near the inner perimeter fence that is out of bounds to inmates.  Specifically, he was standing in the corner where the slow down fence meets the perimeter fence at zone 20.  I then saw that inmate Gorbey had what appeared to be a rope in his hands that was attached to the razor wire on top of the inner perimeter fence.  Inmate Gorbey began to scale the fence at which time I notified Control and the Mobile Patrol that there was an escape in progress.  While I was responding to the perimeter fence inmate Gorbey fell from the fence at which time I arrived and began to give loud verbal orders to get on the ground.  Inmate Gorbey complied and got down on the ground at which time I placed him in hand restraints.  After inmate Gorbey was in hand restraints, I performed a quick pat search and found additional homemade rope in the front left pocket of the khaki pants inmate Gorbey was wearing.  I maintained control of inmate Gorbey on the ground until the Operations Lieutenant and other responding staff arrived and escorted inmate Gorbey out of recreation.

(*Id.,* § 11).  A copy of the incident report was provided to Petitioner on September 24,

2021.  (*Id.*, §§ 14-16).  Petitioner was advised of his rights at that time.  (*Id.*, § 14).

The disciplinary proceedings concerning this incident were suspended pending

referral to the Federal Bureau of Investigations ("FBI").  On September 1, 2021, the FBI

approved the release of the IR for processing and, on September 7, 2021, the FCI Beckley

Warden issued a memorandum granting an extension of time for the UDC hearing.  (ECF

No. 18, Ex. 2, Attach. H, Warden's Extension Memorandum).  The UDC hearing was

conducted on September 30, 2021.  (ECF No. 18, Ex. 2, Attach G).  Petitioner stated he

was not trying to escape but was merely trying to get the attention of the FBI to let them know about "the wrong doing of staff members at FCI Beckley." (*Id*., § 17).

At the conclusion of the hearing, the UDC referred the charges to the DHO because the potential sanctions are only available at the DHO level. (*Id*., §§ 18 & 20). The UDC advised Petitioner of their decision and his right to appeal within 20 calendar days. (*Id*., § 18). Upon referral to the DHO, Petitioner was provided an Inmate Rights at Discipline Hearing form. (ECF No. 18, Ex. 2, Attah. I, Inmate Rights at Discipline Hearing (IR 3534245)). Petitioner refused to sign the form. (*Id*.)

The DHO hearing was held on October 12, 2021. (ECF No. 18. Ex. 2, Attach. J, DHO Report (IR 3534245)). At the hearing, Petitioner again requested and received Copney as his staff representative. (*Id*., §§ II(B)-(C)). Copney met with Petitioner prior to the DHO hearing. (*Id.,* § II(C)). Petitioner was concerned about the late delivery of the report and timing of the disciplinary proceedings, and the DHO explained that the incident report needed to be re-investigated because the original investigating lieutenant also responded to the attempted escape; for that reason, the incident was sent for re-investigation causing a delay in the proceedings. (*Id*.)

Copney was present for the DHO hearing. (*Id*.) Petitioner acknowledged he understood his due process rights. (*Id*., § III(B)). Petitioner also acknowledged that the UDC discussed his rights with him at his UDC hearing, and he did not raise any other issues with the discipline process up to this point. (*Id*., Ex. F). Petitioner did not call any witnesses, provide any documentary evidence, or request any video footage be reviewed. (*Id.,* § III(B)(2)). He again stated, "I was not trying to escape, I was only trying to get the attention of federal authorities to tell them all of the things going on at this prison, including the DHO process." (*Id*.)

At the conclusion of the hearing, the DHO found that the greater weight of the evidence supported the finding that Petitioner committed the prohibited act of Escape (Attempted), in violation of BOP disciplinary code 102. (*Id.* § V). In making this finding, the DHO relied upon the reporting officer's statement contained in the incident report. (*Id.*) The DHO considered Petitioner's denial, but was not convinced by his statement. (*Id.*) The DHO explained to Petitioner: "If issues are going on at the prison he has access to the administrative remedy process to file complaints and his issues are not being resolved by climbing the fence of the recreation yard." (*Id.*) The DHO expunged the violation of BOP disciplinary code 108, finding that it was part of the 102 offense. (*Id.*)

Accordingly, the DHO sanctioned Petitioner with the disallowance of 41 days of GCT,[11] forfeiture of 60 days of non-vested GCT, 28 days of disciplinary segregation, three months loss of commissary privileges, six months loss of e-mail privileges, and nine months loss of phone privileges. (*Id.*, § VI). These sanctions were imposed for the following reasons:

> The action/behavior on the part of any inmate to make plans to escape from any facility/institution poses a serious threat to the ability of the Bureau of Prisons to maintain proper inmate accountability at all times. In the past, evidence has shown inmates on escape status commit crimes in order to survive while they are in the community on escape status. The sanction of the disallowance of Good Conduct Time is imposed to comply with the inmate discipline policy regarding recommended disallowance of Good Conduct Time when an inmate is found to have committed a Greatest Severity prohibited act. The forfeiture of Non-Vested Good Conduct Time is imposed to impress upon Gorbey the seriousness of his actions and to deter others from attempting to escape and also his history of incident reports over the last 6 months. The sanction of Disciplinary Segregation,

---

[11] As addressed in the undersigned's separate Order, Petitioner attempted to amend his § 2241 petition to assert a claim that an excessive amount of GCT had been disallowed within one year. However, as detailed in the undersigned's August 17, 2023 Order (ECF No. 31 at 4-6), notwithstanding the DHO's sanction of the disallowance of 41 days for this offense, and the aggregate proposed disallowance of 81 days of GCT for Petitioner's offenses in 2021, he was actually disallowed 54 days of GCT in that year, in accordance with the regulations. Thus, Petitioner did not allege any plausible due process violation on this basis and the undersigned denied the proposed amended claim as futile.

> Commissary, Telephone, and Email Restriction are imposed to punish
> Gorbey for his actions in relation to having committed this prohibited act
> and to serve as a deterrent to keep others from committing similar acts.

(*Id.,* § VII).  Petitioner was advised of his right to appeal and was provided a copy of the

DHO report on February 18, 2022.  (*Id.*, §§ VIII & IX).

Petitioner's Amended Petition makes four challenges to IR 3534245.  First, he

alleges the DHO was not impartial.  (ECF No. 15 at 11-12).  Second, he alleges a delay in

his disciplinary proceedings denied him due process.  (*Id.*)  Third, he alleges that his DHO

Report was unreasonably delayed.  (*Id.* at 12).  Fourth, he asserts that there is insufficient

evidence to support his guilt because the related federal criminal charges against him

were dismissed.  (*Id.*)

> a.    DHO impartiality.

As it relates to IR 353425, Petitioner alleges that the DHO was biased because she

directed the re-investigation of the incident due to a conflict by the initial investigator.

(ECF No. 15 at 11-12).  The initial investigation was conducted by Lieutenant Forren;

however, Lieutenant Forren was a supervisor who apparently also responded to the

incident, and therefore, he could not be the investigator.  (ECF No. 18, Ex. 2, Attach. J, §

II).  Thus, upon discovering this fact, the DHO sent the matter back for re-investigation

by a non-involved staff member, Lieutenant Bailey.  (ECF No. 18, Ex. 2, Attach, G).

Petitioner contends that this action by the DHO was not authorized and made her no

longer impartial because she "instructed staff to have another Lt. staff Mr. Bailey to claim

he reinvestigated and issued the shot."[12]  (ECF No. 15 at 11).  Thus, Petitioner contends

that "colluding staff sought to cure due process violations by violating due process."  (*Id.*)

---

[12] A "shot" is a slang term for a prison disciplinary violation charge.

Respondent asserts that DHO Leslie was not involved in the investigation of this matter and merely directed a reinvestigation "in order to preserve impartiality." (ECF No. 18 at 27-28; ECF No. 26 at 2-3 and Ex. 1 at 1, ¶ 5). As noted above, a DHO is considered impartial so long as she is not a victim, witness, investigator, or otherwise involved in the incident and DHO Leslie's role in this matter does not fall into those categories. Moreover, Petitioner has pointed to no authority to demonstrate that a reinvestigation is not permitted or that ordering the same requires the removal or change of the DHO. *See Terrell v. Matevousian*, No. 18-cv-3014-WJM, 2019 WL 2774222, *3 (D. Colo. July 2, 2019) (Applicant did not identify any regulation forbidding re-write of incident report before DHO hearing and referral back of incident report is an "available disposition." Thus, there was no violation of due process rights). Accordingly, Petitioner has not sufficiently demonstrated that the DHO in this proceeding was not impartial in order to establish a violation of his due process rights.

b.    Delay in disciplinary proceedings.

Petitioner also asserts that the delay in his UDC and DHO hearings in relation to IR 353425 denied him due process. (ECF No. 15 at 11). He first contends that due process requires that he receive the incident report within 24 hours of the incident and for the Warden to grant any extensions of time or delays of the deadlines set forth in the regulations governing prison discipline. (*Id.*)

While *Wolff* held that a prison disciplinary hearing may not be held without more than 24 hours' notice, it did not specify an outer time limit for holding a hearing. *See Jones v. Cross*, No. 10-3392, 2011 WL 1466589, at *5 (7th Cir. April 19, 2011) (Delays in holding a DHO hearing do not impose an "atypical or significant hardship" warranting

due process protection). Thus, Petitioner's only complaint is that the BOP failed to follow its own regulations.

Pursuant to BOP policy, the UDC *ordinarily* holds the initial hearing within five work days from the time staff became aware of the inmate's involvement in the incident, excluding the day staff became aware of the inmate's involvement, weekends, and holidays. See 28 C.F.R. § 541.7(c) (emphasis added). Further, UDC review of an incident report may be suspended if it is being investigated for possible criminal prosecution, as happened in this case. *Id.* Here, once the matter was released by the FBI for internal handling, the UDC did not hold the initial hearing within five days. Although the Warden granted an extension of time, as permitted by policy, Petitioner complains that the extension was "bogus" and then the UDC again violated due process by not holding its hearing within another five days without another extension. (ECF No. 15 at 11). He further asserts that, when the DHO ordered the reinvestigation, the whole process was restarted nearly two months later and without any authorization from the Warden, all the while delaying the DHO proceeding. (*Id.*)

> Respondent's motion asserts:
>
> BOP policy does not specify a timeframe in which the DHO hearing is to be conducted once the UDC hearing has been completed. The language of the BOP policy that a UDC hearing is "ordinarily' held within five days of staff becoming aware of the inmate's involvement in the incident is not mandatory. That an inmate is not granted a hearing within five days of staff's becoming aware of the incident or does not have his DHO hearing within 24 hours of his UDC hearing does not rise to the level of a due process violation. *See Kokoski v. Small*, No. 07-0145, 2008 WL 3200811, at * 19 (S.D.W. Va. Aug. 5, 2008) ("the only time requirement under *Wolff* is that the inmate receive written notice of the charge within 24 hours of a disciplinary hearing. There are no other time requirements necessary to comport with federal due process.

(ECF No. 18 at 28-29).

As argued by Respondent, the BOP's alleged failure to conduct the disciplinary hearings in strict accordance with the timelines and parameters set forth in the regulations is not sufficient to demonstrate a federal due process violation. *See, e,g, Douglas v. Finnan*, 342 F. App'x 198, 199 (7th Cir. 2009) (citing *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)) (allegation that disciplinary board did not comply with its own procedural rules when it charged a prisoner with filing a frivolous claim is a question of state law or prison policy, which does not give rise to a federal constitutional question for which federal habeas relief is appropriate.).  In fact, as more recently noted by another federal district court:

> [V]iolations of statutes, rules or regulations that require certain procedures which are not compelled by the Federal Constitution do not make out a constitutional claim.  To put it another way, BOP regulations can provide more protection than the Constitution requires, but the regulations do not raise the standard of constitutional due process.  Consequently, failure to follow BOP regulations does not, in and of itself, result in a violation of due process.

*Buhl v. Berkebile*, No. 14-cv-02029-PAB, 2015 WL 3413259, at *5 (D. Colo. May 27, 2015), *aff'd,* 612 F. App'x 539 (10th Cir. 2015).

Thus, to state a due process claim based on a violation of a regulation regarding discipline, Petitioner must allege actual prejudice.  Thus, a disciplinary sanction will not automatically be vacated and remanded because a particular regulation was violated.  *Von Kahl v. Brennan*, 855 F. Supp. 1413 (M.D. Pa. 1994).  "Rather, at least in situations where the minimal requirements of due process have been met, an inmate must show prejudice to the rights sought to be protected by the regulation claimed to be violated."  *Id.* at 1421. Respondent further argues:

> In light of the Supreme Court's recognition of the special concerns faced by prison administrators, the *Von Kahl* court was "reluctant to overtax and/or hamstring prison officials' execution of disciplinary policies and procedures

by mandating an automatic remand for technical non-compliance with a regulation, absent some showing of prejudice to the inmate." 855 F. Supp. at 1422; *see also McClure v. Mass.*, No. 88-4171, 1989 WL 107817 (9th Cir. June 28, 1989) (citing *United States v. Loud Hawk*, 816 F.2d 1323 (9th Cir. 1987) and *United States v. Lovasco*, 431 U.S. 783 (1977)).

(ECF No. 18 at 29).

Thus, to the extent that Petitioner alleges prejudice from the reinvestigation of IR 3534245, which resulted in the Warden granting an extension of time for the UDC hearing and a delay in conducting the UDC hearing, Petitioner fails to allege any actual prejudice and fails to show how any delay negatively impacted the outcome of his disciplinary hearings or his appeal. Accordingly, his due process claim on this basis fails as a matter of law.

### c. Unreasonable delay of DHO report.

Petitioner also asserts that the DHO Report for IR 3534245 was unreasonably withheld from him, constituting a due process violation. (ECF No. 15 at 12). Petitioner argues the report for this DHO hearing, which was conducted on October 12, 2021, was not delivered to him until February 18, 2022 (4 months later). (ECF No. 18, Ex. 2, Attach. J, § IX).

Respondent again asserts that BOP staff complied with policy and due process requirements by delivering Petitioner a copy of the DHO Report, and that there is no mandate that it be provided within 15 days as asserted by Petitioner. (ECF No. 18 at 26). To the extent that Petitioner claims that he could not appeal the decision to disallow and forfeit his GCT until he received the final report, he was not prejudiced thereby. Moreover, as addressed above, the loss of phone and email privileges does not rise to the level of an atypical and significant hardship and Petitioner has no due process right to appeal a prison disciplinary sanction. Thus, he has not established any plausible due

process violation stemming from the alleged delay in receiving the DHO report for IR 3534245.

>           d.       Insufficiency of evidence.

Petitioner's Amended Petition also asserts that the "some evidence" standard could not be met with respect to the attempted escape charge in IR 3534245 because "federal authorities dismissed an indictment in 5:21-cr-214 for lack of evidence and procedural violations." (ECF No. 15 at 12).  His petition offers nothing further in support of this claim.

As noted by Respondent, unlike a criminal proceeding, where the evidentiary standard is beyond a reasonable doubt, a prison disciplinary proceeding "does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board.  Instead, due process in this context requires only that there be *some evidence* to support the findings made in the disciplinary hearing." *Hill*, 472 U.S. at 457 (emphasis added).  While the criminal charges against Petitioner for attempted escape may have been dismissed by the United States Attorney because they could not meet the higher evidentiary burden of beyond a reasonable doubt, the facts in the incident report demonstrate that there was some evidence to support the disciplinary rule violation and there was no due process violation by Petitioner's punishment for that offense.

For all these reasons, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not established any plausible due process violations surrounding the disciplinary proceedings for IR 3534245.  Accordingly, there are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law on the claims in Petitioner's § 2241 petition with respect to IR 3534245.

Petitioner has not demonstrated that the procedural requirements of *Wolff* were not met in each of these prison disciplinary proceedings or that there was not some

evidence to support each violation.  Nor has Petitioner demonstrated that any of the sanctions imposed were excessive under the regulations.  Therefore, he has not established any plausible violation of his federal constitutional rights based upon these three prison disciplinary proceedings.

## IV.    RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that that the presiding District Judge **GRANT** Respondent's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 18), **DENY** Petitioner's Amended Petition for a Writ of Habeas Corpus (ECF No. 15), and **DISMISS** this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S.

140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on Judge Volk.

    The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Petitioner and transmit a copy to counsel of record.

August 21, 2023

                              Dwane L. Tinsley
                              United States Magistrate Judge